J-A14033-17

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| STEWART ENOS, | |
| Appellee | No. 1131 EDA 2016 |

Appeal from the Order March 22, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0008798-2014

BEFORE:  BENDER, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 08, 2017**

This is a Commonwealth appeal from the March 22, 2016 order suppressing video evidence of a drug transaction between Appellee, Stewart Enos, and a confidential informant ("CI").  After careful review, we reverse and remand this case for trial.

The trial court summarized the pertinent facts, which are supported by our independent review of the record, as follows:

Instantly, the CI arranged to purchase drugs from someone named "Stew."  The CI was outfitted with a concealed camera which did not record audio of the transaction.  The CI was searched and given premarked currency to purchase a "dove" or twenty dollars' worth of cocaine.  While Sergeant [Michael] Markovich [of the Pottstown Police Department] observed, the CI then proceeded to a designated meeting area where a white Toyota, driven by [Appellee,] pulled up.  The CI entered [Appellee's] car and was driven about a half a block.  The CI exited the vehicle, returned to the location where Sgt. Markovich dropped him off[,] and gave police a green bag containing the alleged cocaine.  During the controlled buy, law

enforcement could not see into the tinted windows of the car from their nearby vantage point. The vehicle was permitted to leave the scene of the buy[,] and [Appellee] was not arrested until a year later. Law enforcement was able to identify [Appellee] from the video recorded by the CI.

Trial Court Opinion, 8/12/16, at unnumbered 5 (internal citations omitted).

An information was filed on January 23, 2015, charging Appellee with violating 35 P.S. 780-113(a)(30), possession with intent to deliver a controlled substance, 35 P.S. 780-113(a)(16), possession of a controlled substance, and 35 P.S. 780-113(a)(32), possession of drug paraphernalia. Over the course of the next year, the parties filed numerous motions including, *inter alia*, a petition for writ of *habeas corpus*, waivers of Pa.R.Crim.P. 600, motion to revoke bail, and a motion for recusal.

On March 21, 2016, Appellee filed a "Motion In Limine Concerning Video Evidence" and "Defendant's Motion to Reveal the Identity of the Confidential Informant." Following a hearing the same date, the trial court denied both motions. The case proceeded to jury selection, and a jury was selected and sworn. The next day, March 22, 2016, Appellee filed a "Motion to Suppress" and "Defendant's Motion In Limine Concerning the Defendant's Criminal Record." The court held a hearing on the motion to suppress. At the conclusion of the hearing, the trial court suppressed the video recording based on our decision in **Commonwealth v. Dunnavant**, 63 A.3d 1252 (Pa. Super. 2013), affirmed by an equally divided court, 107 A.3d 29 (Pa.

2014). In doing so, the trial court also declared a mistrial based on manifest necessity, as follows:

> The [c]ourt previously declared that [the suppression] motion was out of time, meaning he did not demonstrate that he was prohibited from determining this issue and particularly the case, the *Dunnavant* case.
>
> However, on the other one [sic] that commands this to the [c]ourt's discretion, the [c]ourt granted [Appellee] the out of time filing of that motion and the hearing on that motion in the interest of justice.
>
> Following presentation of further evidence and the argument of the parties, rebriefing of the parties, this [c]ourt granted the motion and suppressed the video. The Commonwealth sought a reconsideration of that and that was denied.
>
> It has all occurred in the span of approximately five hours, and at this stage we are in the place to where, again, I am not going ascribe it to the Commonwealth because the [c]ourt finds that the Commonwealth has committed absolutely no misconduct. Nothing that has occurred here has had anything to do with the Commonwealth, how it's presented its evidence, what the Commonwealth has done. It has nothing to do procedurally with anything.
>
> So in any terms of exposing [Appellee] to double jeopardy because the Commonwealth is now out of time intending to pursue its right which is automatically guaranteed by the Rules of Appellate Procedure to pursue an appeal of this [c]ourt's ruling, and therefore that is the manifest necessity the [c]ourt sees.
>
> And I don't want to get hung up on the Commonwealth making the motion because at this stage they've said to the [c]ourt we want to appeal your ruling. And they have every right to do so. And all they are required to do is under [Pa.R.A.P.] 311(d) make a declaration to the Superior Court that their case cannot go forward.

They may take an appeal right from an order that does not end the entire case where the Commonwealth will certify in its Notice of Appeal that the order will terminate or substantially handicap the prosecution. They intend to tell the Superior Court in their notice of certification that my order will handicap their case.

And what occurs with that is then left to the appellate courts, but clearly it is of no doing of the Commonwealth other than simply pursuing a right guaranteed by the Rules of Appellate Procedure and also the Rules of Criminal Procedure should this arise.

Therefore, the [c]ourt is declaring a mistrial for manifest necessity indicating that there was nothing that was done at all by the Commonwealth that in any way provoked this. And in fact, **it occurred solely due to the error of defense counsel**.

N.T., 3/22/16, at 60–62 (emphasis added). The Commonwealth appealed.[1]

Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth presents the following two issues on appeal:

I.   Did the trial court err when it extended *Commonwealth v. Dunnavant*, 63 A.3d 1252 (Pa. Super. 2013), *aff'd by an equally divided court*, 107 A.3d 29 (Pa. 2014), to suppress a video of a drug transaction in [Appellee's] car, where he had a diminished expectation of privacy?

_____

[1]  The trial court noted that the "Commonwealth's April 12, 2016 Notice of Appeal did not contain the required certification pursuant to Pa.R.A.P. 311(d); however, an amended Notice of Appeal with the necessary language was filed on April 14, 2016." Trial Court Opinion, 8/12/16, at unnumbered 2 n.1. The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution. **Commonwealth v. Petty**, 157 A.3d 953, 954 n.1 (Pa. Super. 2017); Pa.R.A.P. 311(d). Thus the appeal is properly before us. **Commonwealth v. Haines**, ___ A.3d ___, 2017 PA Super 252, *1 n.1 (Pa. Super. filed August 2, 2017).

II. Did the trial court abuse its discretion when it heard [Appellee's] untimely suppression motion after swearing the jury when defense counsel admitted that the grounds for that motion previously existed and the interests of justice did not require it?

Commonwealth's Brief at 4.

Our standard of review of a trial court's order granting a defendant's motion to suppress evidence is well established:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Miller*, 56 A.3d 1276, 1278–1279 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

*Petty*, 157 A.3d at 955 (quoting *Commonwealth v. Korn*, 139 A.3d 249, 252–253 (Pa. Super. 2016)).

The Commonwealth first contends that the trial court erroneously suppressed the drug-transaction video recording and improperly extended *Commonwealth v. Dunnavant*, 63 A.3d 1252 (Pa. Super. 2013) ("*Dunnavant I*"). In *Dunnavant I*, this Court held that the warrantless covert video recording **inside a defendant's home** violated Article I, Section 8 of the Pennsylvania Constitution. The Commonwealth asserts that

- 5 -

the trial court's extension of that holding outside of a defendant's home "is inconsistent with prior Pennsylvania Supreme Court precedent," the long-recognized "diminished expectation of privacy in [a] car," and "**Dunnavant's** foundational precedent." Commonwealth's Brief at 10. The Commonwealth maintains that **Dunnavant I** is merely the application of an exception to the general rule, established in **Commonwealth v. Blystone**, 549 A.2d 81 (Pa. 1988), *aff'd sub nom*. **Blystone v. Pennsylvania**, 494 U.S. 299 (1990), that a defendant "lacks a reasonable expectation of privacy in things he voluntarily discloses to someone else." Commonwealth's Brief at 12. Thus, the Commonwealth contends the trial court improperly extended **Dunnavant I** to apply to the recording in Appellee's vehicle.

The Commonwealth further avers that Appellee forfeited his decreased reasonable expectation of privacy when he invited the CI into his car. Commonwealth's Brief at 13. The Commonwealth urges that once Appellee opened his car to the CI, "he risked that the informant might record everything that occurred inside the car and give that recording to the police." *Id*. The Commonwealth acknowledges that a defendant retains a "modicum of a reasonable expectation of privacy in his car," but "far less than in his home." *Id*. at 19.

Appellee counters that this case involves three precepts: 1) there is a reasonable expectation of privacy in a vehicle, citing **Commonwealth v.**

*Caban*, 60 A.3d 120 (Pa. Super. 2012);[2] 2) "but for" a few exceptions, a warrantless search is *per se* unreasonable, citing **Commonwealth v. Blair**, 575 A.2d 593 (Pa. Super. 1990); and 3) "the warrantless use of a concealed video camera **in a residence** is *per se* unreasonable," citing **Dunnavant I**. Appellee's Brief at 7 (emphasis added). Appellee underscores that the CI was reliable and known to Sergeant Markovich for nine years, and Sergeant Markovich testified that he had time to secure a warrant. Appellee's Brief at 8.

We begin our analysis by examining the underpinnings of **Dunnavant I**. In that case, this Court affirmed a trial court's suppression of a silent video recording worn by a confidential informant obtained inside the defendant's residence. The question before us was "whether the defendant has a privacy interest in not being videotaped secretly in his own home." **Dunnavant I**, 63 A.3d at 1256. We further noted that because the government conducted the video recording, "the question [became] one of constitutional proportion." **Id**.

In that case, the intended meeting place between the informant and the defendant originally was a street corner, but when the defendant arrived, he transported the informant in his car to the defendant's residence,

---

[2] We noted in **Commonwealth v. Coleman**, 130 A.3d 38 (Pa. Super. 2015), that the **Caban** Court relied "on a since overruled standard for reviewing suppression claims." **Coleman**, 130 A.3d at 42 n.1.

where the informant was invited inside and the drug-buy transpired. *Dunnavant I*, 63 A.3d at 1253–1254. The camera recorded, among other things, the informant's ride in the defendant's car and the drug purchase inside of the home. It is noteworthy that the trial court suppressed only the "depict[ion of] the interior of the [d]efendant's residence"; it did not suppress the footage of the informant in the defendant's vehicle. *Id*. at 1254.

The *Dunnavant I* Court relied upon *Commonwealth v. Kean*, 556 A.2d 374 (Pa. Super. 1989), as controlling authority. *Dunnavant I*, 63 A.3d at 1256 ("*Kean* remains controlling law on the subject of a defendant's 'legitimate expectation of privacy not only in their home, but also in the reflection of their home that a videotape captures and preserves.'"). We stated therein that "the dweller of a residence does not expect that an invitee would videotape events occurring inside his or her residence without his or her consent." *Dunnavant I*, 63 A.3d at 1256.

On appeal, our Supreme Court was equally divided,[3] thus resulting in a decision of affirmance. *Commonwealth v. Dunnavant*, 107 A.3d 29 (Pa. 2014) ("*Dunnavant II*"). The opinions in *Dunnavant II* suggest agreement with the Commonwealth's position in this appeal. Now Chief

_____

[3] Now Chief Justice Saylor was joined by Justices Baer and Todd in support of affirmance; Former Chief Justice Castille was joined by former Justices Eakin and Stevens in support of reversal.

Justice Saylor, writing in support of affirmance, stressed that unlike in *Blystone*, the conversations in *Dunnavant II* occurred "in the sanctity of one's home," where of all the places that exist, an individual "must feel secure in his ability to hold a private conversation . . . ." *Dunnavant II*, 107 A.3d at 30. Similarly, Justice Todd, also writing in support of affirmance, opined that the place in which the warrantless intrusion and secret video were made by the CI, inside the defendant's home, "was the critical factor in rendering this conduct a constitutional violation." *Id*. at 31. Justice Todd concluded that the warrantless video recording made inside of the defendant's home should be suppressed in accordance with *Commonwealth v. Brion*, 652 A.2d 287 (Pa. 1994), which established that "a person does not forfeit the strong privacy interest he or she has in [his] home or residence just by allowing an individual to come inside." *Id*. at 32.

In support of reversal, then Chief Justice Castille, joined by Justices Eakin and Stevens,[4] focused upon *Kean's* reliance on *Blystone*, 549 A.2d 81, "a case that considered the constitutionality of Pennsylvania's Wiretap Act (18 Pa.C.S. §§ 5701–5782) when a suspect is audio-recorded by a CI

---

[4] The justices who would have reversed *Dunnavant I* are no longer on the High Court; furthermore, as they did not find a controlling privacy interest in *Dunnavant II*, which occurred inside a residence, it is doubtful they would find such interest in a motor vehicle.

wearing a recording device."[5]  *Dunnavant II*, 107 A.3d at 36.  The opinion in support of reversal concluded that "given the exigent circumstances, and given that there was no underlying unlawful governmental conduct, such as 'sending' a CI into a citizen's home for the purpose of recording a conversation, no constitutional violation occurred."  *Dunnavant II*, 107 A.3d at 51.

In the present case, the trial court's explanation in support of its decision to suppress the video is very brief, without analysis of any relevant case law; indeed, the court only minimally referenced *Dunnavant I*.  It further determined that the window tint of Appellee's vehicle, in combination with the holding in *Dunnavant I*, compelled suppression of the video in this case.  Trial Court Opinion, 8/12/16, at unnumbered 4–5.  Also as noted by the trial court, Appellee did not present any evidence, such that the Commonwealth's evidence was uncontradicted. Trial Court Opinion, 8/12/16, at unnumbered 4.  Without citing support and merely noting Appellee's reliance on *Dunnavant I*, the trial court determined that the CI's actions at the behest of the government, in light of the concealment of the transaction by the car's window tint, constituted an unreasonable search.  It concluded that Appellee had an expectation of privacy in his vehicle.  *Id*. at 5.

---

[5]  The applicability of *Blystone* to the instant case is premised upon our Supreme Court's acknowledgment in *Brion* that "[i]mplicit in any discussion of an expectation that a communication will not be recorded, is a discussion of the right to privacy." *Brion*, 652 A.2d at 288.

We have examined the law and the arguments of the parties in light of the record. We conclude that the issue is controlled by **Blystone**, not **Dunnavant**. As our Supreme Court explained in **Blystone**:

> It has been held that the protection provided by Article I, § 8 of the Pennsylvania Constitution extends to those zones where one has a reasonable expectation of privacy, **Commonwealth v. DeJohn**, 486 Pa. 32, 403 A.2d 1283 (1979) *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980); and that Article I, § 8 creates an implicit right to privacy in this Commonwealth. **Commonwealth v. Platou**, 455 Pa. 258, 312 A.2d 29 (1973) *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). To determine whether one's activities fall within the right of privacy, we must examine: first, whether appellant has exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable. **Commonwealth v. Sell**, **supra**; **Katz v. United States**, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Concurring Opinion, Harlan, J.); **Commonwealth v. Tann**, 500 Pa. 593, 459 A.2d 322 (1983).

**Blystone**, 549 A.2d at 87.

The issues in **Blystone** involved a defendant's constitutional challenge to the Pennsylvania Wiretap Act, 18 Pa.C.S. §§ 5701–5782, and an individual's lack of privacy interest in information voluntarily disclosed to an informant. The **Blystone** court reinforced that a defendant lacks a reasonable expectation of privacy in things he voluntarily exposes to someone else. **Blystone**, 549 A.2d at 87.

Herein, Appellee forfeited his decreased reasonable expectation of privacy in his automobile when he invited the CI into it. Once he opened his car to the CI, he relinquished any reasonable expectation of privacy and the

protections of the Fourth Amendment and Article I, Section 8, and he risked that the entire transaction could be recorded and given to the police.

As the Commonwealth points out, however, the **Blystone** doctrine has its limits. **See**, **e.g.**, **Kean**, 556 A.2d 374, and **Brion**, 652 A.2d 287; Commonwealth's Brief at 13. One year following **Blystone**, this Court held that it did not apply to video recordings of private activities within someone's bedroom. **Kean**, 556 A.2d at 381–382 (distinguishing **Blystone** and observing that under Article I, Section 8 of the Pennsylvania Constitution, a Pennsylvania citizen "may maintain a legitimate expectation of privacy in the home notwithstanding the fact that the interior of the home is secretly videotaped by a guest."). In **Kean**, this Court distinguished **Blystone** on the basis that video recording persons in their own home—indeed, in their own bed while engaging in sexual relations—was "uniquely invasive." **Id**. at 382.

Subsequently, in **Brion**, our Supreme Court, noting the issue before it was "whether the **Blystone** rationale extends to cases involving the surreptitious recording of a conversation in a private residence," held that "an individual can reasonably expect that his right to privacy will not be violated in his home through the use of any electronic surveillance." **Brion**, 652 A.2d at 289 and n.2. Thus, the **Brion** Court determined that **Blystone** did not apply within a defendant's home. Clearly, a defendant's elevated expectation of privacy within his home is fundamental to the limitations in

both **Kean** and **Brion**. **Kean**, 556 A.2d at 380 ("Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society."); **Brion**, 652 A.2d at 287 ("[T]he right to privacy in one's domain is sacrosanct. . . ."). Thus, the **Blystone** doctrine yields to a defendant's paramount privacy interest in his home.

Here, the limitations discussed *supra* do not apply. The silent video recording, which took place in Appellee's automobile, does not present the same privacy concerns. "[E]ven though privacy protections are implicated under Article I, § 8, the heightened privacy concerns involved in a seizure from an individual's person are not present where an object is seized from a vehicle." **Commonwealth v. McCree**, 924 A.2d 621, 630 (Pa. 2007); **see also Commonwealth v. Holzer**, 389 A.2d 101, 106 (Pa. 1978) (expectation of privacy in one's vehicle significantly less than in one's home or office); **Commonwealth v. Bosworth**, 456 A.2d 661, 663–664 (Pa. Super. 1983) ("It is by now well settled that a person's expectation of privacy with respect to an automobile is significantly less than with respect to his or her home or office."). Automobiles are accorded a diminished expectation of privacy because of their "open construction, their function, and their subjection to a myriad of state regulations." **Commonwealth v. Timko**, 417 A.2d 620, 623 (Pa. 1980).

Thus, we conclude that **Blystone** compels the conclusion that suppression of the video recording in this case was an abuse of discretion. Appellee met with the CI for the purpose of selling him drugs and voluntarily invited him into the car. The entire transaction occurred inside that vehicle. In line with **Blystone**, once Appellee opened his automobile to the CI, he risked that everything occurring inside the car would be recorded and given to the police. Appellee therefore relinquished his reasonable expectation of privacy and the protections of the Fourth Amendment and Article I, Section 8. Accordingly, the trial court erred in suppressing the video recording of the drug transaction.

The Commonwealth alleges in its second issue that the trial court abused its discretion when it entertained Appellee's untimely suppression motion after the jury had been sworn, asserting that the merits of the motion were not so apparent that the interests of justice demanded hearing it. To the contrary, the Commonwealth contends that

> [t]he interests of justice did not support hearing [Appellee's] midtrial motion to suppress the video of him selling drugs because it was unsupported by existing law. There is no case supporting the proposition that a defendant has a reasonable expectation that he will not be video recorded after inviting a person into his car.

Commonwealth's Brief at 27. Furthermore, it points out that defense counsel admitted that the grounds for the motion previously existed. *Id*. at 22–23. However, despite observing that the tardy presentation of the motion "occurred solely due to the error of defense counsel" in failing to

diligently research its case, N.T., 3/22/16, at 62, and recognizing the novelty of Appellee's argument, the trial court opined that the interests of justice required it to hear the untimely suppression motion so as to avoid a later Post Conviction Relief Act[6] ("PCRA") proceeding. *Id*. at 60; Trial Court Opinion, 8/12/16, at unnumbered 2.

The Commonwealth notes Appellee's procedural missteps, as follows: On the day before trial, March 21, 2015, Appellee filed a motion *in limine* seeking to preclude the Commonwealth's admission of the video of the drug transaction recorded by the CI. The trial court held a hearing on the issue, following which it denied the motion. The parties then selected a jury that was seated and sworn. The next day, defense counsel submitted a suppression motion. Counsel told the court that he had "just discovered" **Dunnavant I**, a case from 2013, that he believed would dissuade the court from its previous ruling. N.T., 3/22/16, at 5. The trial court cited the waiver provision of Pa.R.Crim.P. 581 and expressed incredulity that defense counsel appeared to be invoking the exception of Rule 581, that the opportunity to locate the case "did not previously exist." Pa.R.Crim.P. 581(B).[7] Defense

---

[6] 42 Pa.C.S. §§ 9541–9546.

[7] Pa.R.Crim.P. 581 provides, in pertinent part:

> (A) The defendant's attorney, or the defendant if unrepresented, may make a motion to the court to suppress any evidence

*(Footnote Continued Next Page)*

- 15 -

counsel admitted, "The opportunity did previously exist." N.T., 3/22/16, at 5. The trial court then protested as follows:

> Here's the dilemma the [c]ourt is put into, meaning that, you know, at this stage if I am to, you know, strictly enforce Rule 581, this issue is deemed waived. And if it is deemed waived— and now you've placed on the record that **you simply did not do the research necessary in a timely fashion to comply with the rules**, you would have discovered this case. But you didn't.
>
> The interest of justice for this [c]ourt has taken on a whole new view. The interest of justice is the question of whether does it get approached now or does it get approached only if this defendant was convicted and was to file a Post Conviction Relief Act [("PCRA") petition] against you for clearly not following this rule.
>
> * * *
>
> At this stage I am going to permit the untimely filing of this Motion to Suppress Video Evidence.

*(Footnote Continued)* ─────────────

> alleged to have been obtained in violation of the defendant's rights.
>
> (B) Unless the opportunity did not previously exist, or the interests of justice otherwise require, such motion shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 578. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.
>
> * * *
>
> *Comment:*
>
> * * *
>
> It should be noted that failure to file the motion within the appropriate time limit constitutes a waiver of the right to suppress.

- 16 -

N.T., 3/22/16, at 8–9 (emphasis added); Trial Court Opinion, 8/12/16, at unnumbered 3.

In defending its decision to entertain the untimely suppression motion, the trial court observed in its Pa.R.A.P. 1925(a) opinion that the Commonwealth did not request a continuance. Trial Court Opinion, 8/12/16, at unnumbered 3. It further concluded that "the potential for a meritorious [PCRA] claim based on **counsel's deficient performance in failing to research and file a timely suppression motion** required [the c]ourt, in the interests of justice, to permit the untimely filing of a Motion to Suppress Video Evidence." *Id*. at unnumbered 3–4 (emphasis added).

In supporting its position that the trial court abused its discretion in entertaining, and ultimately granting, Appellee's untimely suppression motion, the Commonwealth cites Pa.R.Crim.P. 578, which provides that a defendant must file a single *omnibus* pretrial motion. The Commonwealth also refers us to Pa.R.Crim.P. 579(A), which requires that such motion be filed within thirty days after arraignment unless, *inter alia*, the opportunity did not previously exist or counsel was not aware of the grounds for the motion. The Commonwealth's position is that the "interests of justice did not support hearing defendant's midtrial motion to suppress the video of him selling drugs because it was unsupported by existing law." Commonwealth's Brief at 27. The Commonwealth decries the trial court's decision to

"abandon[] the Rules of Criminal Procedure based on the 'potential for a meritorious PCRA claim' . . . ." *Id*. at 28.

The Commonwealth's arguments are compelling. We do not condone the late consideration of Appellee's suppression motion, and we are constrained to find that the trial court erred in entertaining it.

> Under Pa.R.Crim.P. 581(B), the defendant shall file suppression issues within an omnibus pretrial motion. "The motion shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). Thus, "the rule is designed to provide one single procedure for the suppression of evidence." Rule 581, official comment. A defendant may file supplemental motions to suppress, but only "unless the opportunity did not previously exist, or the interests of justice otherwise require." Pa.R.Crim.P. 581(B); *Commonwealth v. Micklos*, 448 Pa. Super. 560, 672 A.2d 796, 802 (1996). "The 'interests of justice' exception provides a trial judge with discretion to excuse a party's tardy presentation of a suppression motion." *Id*. We review the court's decision on these matters for an abuse of discretion. *Id*. An abuse of discretion is not a mere error of judgment. Rather, it exists where the judge acts manifestly unreasonably, misapplies the law, or acts with partiality, bias, or ill will. *Id*. at 803.

*Commonwealth v. Johonoson*, 844 A.2d 556, 560–561 (Pa. Super. 2004) (footnote omitted).

Furthermore, under Pa.R.Crim.P. 579, an omnibus pretrial motion must be filed within thirty days of arraignment. The only exceptions to this rule are: (1) the opportunity to do so did not exist, (2) the defendant or defense counsel was unaware of the grounds for the motion, or (3) the time for filing was extended by the court for good cause shown. Pa.R.Crim.P.

579(A); ***Commonwealth v. Borovichka***, 18 A.3d 1242, 1248 (Pa. Super. 2011).

Examining the exceptions of Pa.R.Crim.P. 579(A), it is clear that none is applicable. Appellee had the opportunity to file, and indeed, did file multiple and various pretrial motions. N.T., 3/22/16, at 5 ("[T]he [c]ourt would note that you have done extensive research in this case and have presented various motions to this [c]ourt which we did hear pretrial."). Most recently, counsel had filed the aforementioned motion *in limine*. Thus, the opportunity to file the motion did exist; significantly, counsel has not averred a lack of opportunity to do so. Regarding a lack of awareness of the grounds for the motion, portions of the record highlighted *supra* reveal the incredulity of the trial court regarding counsel's failure to present a timely suppression motion, especially in light of counsel's presentation of the earlier motion *in limine* that dealt with the exact evidence. Counsel, instead, proclaimed he had done "a little bit of extra research and found this case[, ***Dunnavant I***, 63 A.3d 1252,] which I was not aware of before." N.T., 3/22/16, at 6. Now, on appeal, counsel[8] explains, "It was a mistake, nothing more, nothing less. Mistakes happen . . . ." Appellee's Brief at 4. Counsel's "mistake," however, does not equate to a defendable "lack of awareness" as encompassed by Rule 579(A). Finally, regarding the third exception, there has been no

---

[8] New counsel represents Appellee on appeal.

asserttion, and the record does not reveal, that the trial court extended the time for filing an omnibus pretrial motion.

The trial court's sole reason for addressing the untimely suppression motion was its observation "that the potential for a meritorious [PCRA] claim based on **counsel's deficient performance in failing to research and file a timely suppression motion** required this [c]ourt, in the interests of justice, to permit the untimely filing . . . ." Trial Court Opinion, 8/12/16, at unnumbered 3–4 (emphasis added). While such reason appeals to this Court's ongoing concern regarding the interests of judicial economy, we do not find that it meets the criminal procedural rule's concern for the interest of justice.

We agree with the Commonwealth that the trial court's departure from the rules of criminal procedure based on "the potential for a meritorious [PCRA] claim" deprived the Commonwealth of its ability to address such claims in the "proper setting under the established ineffectiveness standards." Trial Court Opinion, 8/12/16, at unnumbered 3; Commonwealth's Brief at 28. In the context of the PCRA, a petitioner must prove more than merely the arguable merit of an unfiled suppression claim when seeking collateral relief. Commonwealth's Brief at 28; *see*, *e.g.*, *Commonwealth v. Watley*, 153 A.3d 1034, 1040 (Pa. Super. 2016) (To attain relief from ineffective assistance of counsel, PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit;

(2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance"), *appeal denied*, 2017 WL 2538785, 69 MAL 2017 (Pa. filed June 12, 2017). Moreover, as the Commonwealth suggests, the trial court's action absolved Appellee of the applicable burdens of proof and persuasion that are born in the PCRA context. **See**, **e.g.**, **Commonwealth v. Jones**, 596 A.2d 885, 888–889 (Pa. Super. 1991) ("[T]he reasonableness of trial counsel's actions is a prong of the ineffective assistance of counsel claim which must be proven and not merely rebutted."). We endorse the Commonwealth's contention that this Court will not permit defense counsel to "use the PCRA as a shield from [his] admitted negligence." Commonwealth's Brief at 30.

Furthermore, and significantly, this case does not involve only an untimely motion to suppress. It encompasses a motion to suppress filed after a jury has been sworn and double jeopardy has attached. **Commonwealth v. Vargas**, 947 A.2d 777, 780 (Pa. Super. 2008) ("In Pennsylvania, jeopardy does not attach and the constitutional prohibition against double jeopardy has no application until a defendant stands before a tribunal where guilt or innocence will be determined. In a criminal jury trial, jeopardy attaches when the jury is sworn.") (citation omitted). As such, the grant of suppression impaired the Commonwealth's right to appeal the order in that a manifest necessity had to be found by the trial court. Thus, the

suppression motion risked the Commonwealth's right to appeal. While the trial court instantly found a manifest necessity for a mistrial, that decision was discretionary. *Commonwealth v. Walker*, 954 A.2d 1249, 1254 (Pa. Super. 2008) (It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and appellate court will not disturb the decision absent an abuse of that discretion).

There was no legitimate and compelling reason why Appellee could not have located and proffered *Dunnavant I* at the pretrial hearing addressing his motion *in limine.* *See Johonoson*, 844 A.2d at 561 (explaining that because the circumstances were known to the appellant, he could have proffered the basis for his untimely supplemental suppression motion at the time of his original pretrial suppression motion; therefore the trial court properly denied the supplemental motion as untimely). We therefore conclude that the trial court abused its discretion in failing to deny the suppression motion as untimely. Furthermore, and relevant to a showing of prejudice within the context of an ineffectiveness claim, *Dunnavant I* is not directly on point. In fact, we concluded that the trial court's extension of *Dunnavant I* cannot stand. Thus, because Appellee sought extension of the current law, the merits of the suppression motion were not so apparent as to require the motion to be heard. *See Commonwealth v. Williams*, 323 A.2d 862, 866 (Pa. Super. 1974) (discretion to excuse the defendant's failure to file pretrial suppression motion should be exercised where "the

merits of counsel's oral motion were so apparent that justice required that it be heard."). Indeed, Appellee's argument was that the trial court should change the existing law, which the trial court clearly recognized, as evidenced by its initial reaction to the late motion. N.T., 3/22/16, at 7–9. As argued by the Commonwealth, "the merits of a theory **unsupported by existing law** could not be so facially meritorious as to warrant in immediate hearing." Commonwealth's Brief at 28 (emphasis added). The suppression court's sole basis for its decision—the avoidance of a potential collateral claim—did not warrant abandonment of the time requirement of Pa.R.Crim.P. 578, especially because double jeopardy had attached.

Order reversed; case remanded to the common pleas court; jurisdiction relinquished.

P.J.E. Bender files a Concurring Memorandum.

Judge Bowes files a Concurring & Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2017